FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 MAR -6 PM 2: 02

CLERK'S OFFICE
AT BALTIMORE

_____ DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

Kristi O'Malley
Assistant United States Attorney
Kristi.O'Malley@usdoj.gov

Mailing Address:
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770-1249

Office Location:
6406 Ivy Lane, 8th Floor
Greenbelt, MD 20770-1249

DIRECT: 301-344-4431
MAIN: 301-344-4433
FAX: 301-344-4516

February 4, 2015

Lisa Lunt, Esq.
Office of the Federal Public Defender
For the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770

  Re: <u>United States v. Marc Punzalan,</u>
    Criminal No. JFM-14-252

Dear Ms. Lunt:

  This letter confirms the plea agreement, together with the sealed supplement, which has been offered to the defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by February 18, 2015, it will be deemed withdrawn. **<u>The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)</u>**. The terms of the agreement are as follows:

### Offense of Conviction

  1. The defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with production of child pornography, in violation of 18 U.S.C. § 2251(a). The defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

  2. The elements of the offense to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) on or about the date specified in the Indictment, the victim was under the age of eighteen; (2) the Defendant knowingly employed, used, persuaded, induced, enticed or coerced the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

(3) that the visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: not less than 15 years and not more than 30 years imprisonment, a $250,000 fine, and supervised release for 5 years to life. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.	This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.	Pursuant to § 2G2.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level is 32.

b.	Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), the offense level is increased by 2 levels to 34, because the victim in this case was between the ages of 12 and 16 years old at the time of the offense.

c.	Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), the offense level is increased by 2 levels to 36, because the offense involved the commission of a sexual act or sexual contact.

d.	Pursuant to U.S.S.G. § 2G2.1(b)(3), the offense level is increased by 2 levels to 38, because the offense involved distribution.

e.	Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), the offense level is increased by 2 levels to 40, because the offense involved the use of a computer to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

f.	Pursuant to U.S.S.G. § 3D1.4, the offense level is increased by 4 additional levels to 44, because the child pornography was produced on at least four separate occasions, involving at least four minor victims, and the conduct specifically does not group pursuant to U.S.S.G. § 3D1.2.

g.	This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose this adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The final offense level is 41.

7.	The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

4

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the defendant intends to rely upon any expert report or opinion at sentencing, he must disclose any such opinion or report to the government 30 days in advance of the sentencing date.

## Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **180 months** imprisonment is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the Defendant and the United States Attorney's Office

10. At the time of sentencing, the parties will jointly request that the Court accept the stipulated sentence of 180 months imprisonment. If the plea is accepted by the Court, this Office will recommend a lifetime term of supervised release. At the time of sentencing, this Office will move to dismiss any open counts.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Registration as a Sex Offender

12. The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Forfeiture

13. The defendant understands that the Court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of:

a. Any visual depiction described in Title 18, U.S.C. §§ 2251, 2251A, or 2252, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110;

b. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offenses; and

c. Any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses, including but not limited to:

  i. iPad 16GB s/n: DMPHQPNODVD1

  ii. Blackberry Torch Cell Phone, model: 9800, IMEI: 353491042710180

  iii. Compaq Presario Desktop Computer SR5450F, s/n: 3CR811119J

  iv. Micro Center 4GB Thumb Drive, s/n: 130066790BG04G

The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

15. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Restitution

16. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 2259, 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. If the Court imposes the agreed-upon sentence, the Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

18. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or

7

local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

19. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Kristi O'Malley
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-5-15
Date

Marc Punzalan

I am Marc Punzalan's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2-5-15
Date

Lisa Lunt, Esq.

## ATTACHMENT A
### Statement of Facts

*The United States and Defendant Marc PUNZALAN stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

At all relevant times to this case, **MARC PUNZALAN ("PUNZALAN")** was a citizen of the Philippines and a resident of Rockville, Maryland.

From at least January 2012 through at least January 2014, **PUNZALAN** persuaded, induced, and coerced at least four female victims between the ages of 12 and 16 to send him sexually explicit images of themselves through applications on cellular phones or through social media sites over the Internet. **PUNZALAN** also assumed the identity of at least one of the victims and used her identity to persuade other female minors to send him sexually explicit images. Each of the victims informed **PUNZALAN** at different points that she no longer wished to send images to him. **PUNZALAN** responded to each victim by threatening to send the images to the victim's friends or family or publicly post the images if the victim did not send more images depicting more sexually explicit conduct. **PUNZALAN** also created online social media accounts in the victims' names and posted images **PUNZALAN** had received from the victims on those accounts.

Victim 1

In 2012, **PUNZALAN** began to exchange Internet chat messages with Victim 1, who was 12 years old at the time. **PUNZALAN** recalls that Victim 1 told **PUNZALAN** that Victim 1 was 14 years old. **PUNZALAN** communicated with Victim 1 through various social media and chat applications for a total of about 5 months off and on for over a year. During those communications with Victim 1, **PUNZALAN** asked Victim 1 to send him pictures, first of Victim 1's face, then of Victim 1 topless, and later of Victim 1's vagina. **PUNZALAN** also persuaded Victim 1 to chat with **PUNZALAN** while Victim 1 was nude via a cell phone video chat application.

A little over a year after **PUNZALAN** first began to communicate with Victim 1, **PUNZALAN** began to request images of Victim 1 inserting a hairbrush into her vagina and anus. When Victim 1 told **PUNZALAN** that she did not want to provide these types of images, **PUNZALAN** told Victim 1 that he would post the pictures that he already had on social media accounts. In response to this threat, Victim 1 continued to send **PUNZALAN** pictures of herself, including a picture of Victim 1 inserting a hairbrush in her vagina.

Victim 2

In approximately 2012, **PUNZALAN** posed as a high school age female (Jane Doe 1) and sent a "friend" request to Victim 2 through a social media account. **PUNZALAN**, using the identity of Jane Doe 1, then began to request naked pictures of Victim 2 through communications

9

via various social media and Internet chat accounts. After sending some images of herself nude, Victim 2 told **PUNZALAN** (who she thought was Jane Doe 1) that Victim 2 did not want to send anymore pictures. **PUNZALAN** then threatened to send Victim 2's pictures to other people, and to come to Victim 2's house and tell Victim 2's parents and neighbors about the pictures. **PUNZALAN**, posing as Jane Doe 1, then requested Victim 2 to take pictures of her touching her vagina and inserting objects such as dildos or hairbrushes into her vagina. Victim 2 complied and sent such pictures of herself engaged in sexually explicit conduct. **PUNZALAN** created social media accounts in Victim 2's name and posted naked pictures of Victim 2 on those accounts.

Victim 3

In approximately July 2013, **PUNZALAN** began to communicate with Victim 3, who was 14 years old at the time, via an Internet based chat application. **PUNZALAN**, posing as Victim 2 (whose pictures and identifying information he had previously acquired through chats with Victim 2), requested naked pictures of Victim 3 in exchange for gift cards to clothing stores that **PUNZALAN** promised to send to Victim 3's home address. Victim 3 eventually communicated to **PUNZALAN** that Victim 3 did not want to send anymore images of herself. **PUNZALAN**, posing as Victim 2, then told Victim 3 that if Victim 3 did not continue to send naked pictures of herself, **PUNZALAN** would post the pictures on the doors of Victim 3's neighbors. **PUNZALAN**, posing as Victim 2, then told Victim 3 to include her face in some naked pictures (which she had not previously done) and to insert objects, such as hairbrushes, into her vagina. Victim 3 complied and sent the requested pictures of herself engaged in sexually explicit conduct.

At one point, Victim 3 asked **PUNZALAN** (who was posing as Victim 2) if he was really a male. **PUNZALAN** responded by sending Victim 3 a naked picture of a female's body. **PUNZALAN** also sent Victim 3 a collage containing several nude images of Victim 3 and Victim 3's name and address. **PUNZALAN** threatened to send this collage to other people.

Victim 4

In approximately April 2013, when Victim 4 was approximately 13 years old, Victim 4 met **PUNZALAN** in an internet chat room. **PUNZALAN** communicated with Victim 4 through text messages and various Internet chat and social media accounts. **PUNZALAN** persuaded Victim 4 to send naked images of herself to **PUNZALAN**. In approximately January 2014, when Victim 4 refused to send any further naked pictures of herself to **PUNZALAN**, **PUNZALAN** threatened to and then did send naked pictures to Victim 4's family members. **PUNZALAN** posed as Victim 4 to communicate with Victim 4's older sister through a chat messaging application. **PUNZALAN** posted a naked image of Victim 4 as **PUNZALAN'S** profile picture on that chat messaging application. **PUNZALAN** also sent sexually explicit images of Victim 4 to one of Victim 4's friends via a social media website, including a picture showing a hairbrush inserted into Victim 4's vagina.

All four of the above-described minor victims sent visual depictions of themselves engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2)(A), to **PUNZALAN** via internet social media or chat messaging accounts. Therefore, the sexually explicit images were transported or transmitted in or affecting interstate or foreign commerce.

On May 16, 2014, the FBI executed a search warrant at **PUNZALAN'S** residence. After waiving his *Miranda* rights, **PUNZALAN** admitted that he had communicated with Victims 1 and 4 (the only identified victims at the time of the warrant), as well as other females. **PUNZALAN** admitted to setting up social media and chat messaging accounts in his victims' names to scare the victims when they refused to send **PUNZALAN** more pictures. **PUNZALAN** also admitted to talking to females as young as 13 years old.

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

2-11-15
Date

Marc Punzalan

I am Marc Punzalan's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

2-11-15
Date

Lisa Lunt, Esq.